# Norbeck *v.* Davis, Appellant.

[Marked to be reported.]

157        399
e  30 SC  1374
e  30 SC  1375
30 SC  1376

*Husband and wife—Execution—Interpleader—Evidence—Competency of wife as witness.*

In interpleader proceedings to determine the ownership of goods seized as the property of the husband, but claimed by the wife, the wife is a competent witness to support her title, if the husband disclaims ownership.

If the husband actually claimed the property and were on the side of the execution creditor, then the antagonism which the law contemplates would exist, and the wife would be incompetent.

*Evidence of wife's ownership of household goods.*

Where the evidence shows that household goods had been in possession of a married woman for over thirty years, and that she received them from her first husband who had been dead for thirty years, the jury may fairly presume that her title was settled. In such a case, the fact that the second husband replaced various articles which were worn out by use, did not change his wife's title.

*Assignment of error—Evidence.*

An assignment of error to the admission of testimony will not be considered where the bill of exception does not show the purpose of the offer, or the reason for the objection or admission of the evidence, the evidence being admissible for some purposes.

Argued May 15, 1893. Appeal, No. 331, Jan T., 1892, by defendant, B. F. Davis, from judgment of C. P. Lancaster Co., Dec. T., 1889, No. 46, on verdict for plaintiffs, William A. Norbeck et al., executors of Lydia C. Doersom, deceased. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and THOMPSON, JJ.

Interpleader to determine ownership of household goods seized as property of Philip Doersom, but claimed by his wife.

When Thomas F. McElligott, a witness for plaintiff, was on the stand, he was asked: " Q. What about the rest of the furniture ? A. I have heard him say, I have heard Mr. Doersom say many times—" Objected to by defendants. Exception. " A. I have heard Mr. Doersom say frequently that his wife brought him a well-furnished house. Q. I am asking now about this particular furniture that was levied on. A. He always said that it belonged to his wife—never said anything else.

Q. Did he say where it came from? A. He said it came through his wife." [1]

The same witness was asked: " Q. Did you hear Mr. Doersom admit in the presence of his wife and daughters that he had given this piano to his daughters?" Objected to by defendant, objection overruled, and exception. "A. Yes, sir." [2]

The same witness was also asked: " Q. If you know from anything Mr. Doersom told you, for whom did he buy that piano, or to whom did it belong?" Objected to by defendant. " Q. For whom did Mr. Doersom buy the piano, or to whom did he give it, if you know?" Objected to. " Q. To whom did he give it?" Objected to by defendant. "A. He gave it to the girls." By Mr. Wilson: "Were you present? A. I don't know that I was present, just then, but I know, I heard him say so. That is what I know. He gave it to the girls, he told me." By the Court: " You say you heard Mr. Doersom say so at the time? A. Yes, sir." Defendant objects to the foregoing testimony; objection overruled and exception. [3]

This witness was afterwards called by defendant.

Defendant objected to the competency of Mrs. Lydia C. Doersom to testify in the case. Her testimony was in substance, that she was the plaintiff in the case, and the wife of Philip Doersom ; that she was the owner of the goods levied on ; that the " piano " was given or donated in the first place by Philip Doersom to the daughters, and subsequently by them to witness—they being at the time minors and members of her family ; that other articles were given to her by her husband, Doersom, to replace those in kind or value, which she had got from her first husband, Louis Norbeck, in Baltimore, who died thirty odd years before, but which Mr. Doersom had converted to his own use ; some were given to her by her daughter, Mrs. McElligott; part of the lot levied on was Louis Norbeck's ; and still others she had bought herself, with money she had earned by sewing and which Mr. Doersom had allowed her to have, as well as with money she had got from her said first husband, Louis Norbeck's estate, her husband, Doersom, giving her a judgment for $2,000. [4]

The court charged in part as follows :

" If you believe the testimony of Mrs. Doersom, contained in her depositions, there, and some other testimony in regard to

these household goods, having been long owned by her, and in her possession, the then plaintiff in that execution, namely, Mr. Davis, can take nothing, because his claim was against Philip Doersom, and not against Mrs. Doersom." [6]

Plaintiffs' point was as follows:

" If the jury believes the testimony of Lydia C. Doersom, the verdict must be in favor of plaintiffs.  *Answer :* We affirm that point.   We say, that is the case, if you believe that testimony." [5].

Defendant's points were among others as follows:

" 6. The jury is instructed that her title to the piano, an alleged present, in the first place from Mr. Doersom to his minor children, who in turn made an alleged present to their mother, Mrs. Doersom, and the following other articles given by Mr. Doersom to his wife : refrigerator, one hat rack, one set parlor furniture, one chest, six chairs, one secretary, one stove, tubs, levied on ; as well as the following articles, for which she can't account, viz. : silverware, washstand, four chairs, one book case, one clock, tinware, cannot be sustained, and the verdict for the above-named articles must be in favor of Mr. Davis.  *Answer :* If the jury believe Mr. Doersom presented to his children these articles before the debt of Mr. Davis was contracted, then we deny this point.   Because, if you or I in our lifetime own any furniture, household furniture, or anything else, we can give it to whom we please, if we have no debts.   The law approves that.   But if we have creditors, and we give it to them to defeat the claims of the creditors, then it is a fraud on those creditors and they cannot take it.   This property was given long before the execution against Mr. Doersom was issued.   But you are to judge from all the facts whether that is so.   If the jury believe that Mr. Doersom presented his children with these articles before the debt of Mr. Davis was contracted, and he did it in good faith, and did not owe anything at the time, then we deny that point." [7]

" 7. Nor has she established her title to the lounge, four beds and bedding, one bureau, three washstands, two chests, one wardrobe, fifteen chairs, one sink, one clock, queensware and other ware, for the reason that by her own testimony these goods belonged to her husband's estate, Louis Norbeck, who left children, and, therefore, did not belong to her individually.

*Answer:* You will say and decide whether the above articles, ·once the property of Louis Norbeck, the first husband of Mrs. Doersom, at his death, were retained in the possession of Mrs. Norbeck, now Mrs. Doersom. You have the right to conclude the property was hers. We say the jury have the right to conclude that under the evidence, if you believe it." [8]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–4) rulings; and (5–8) instructions; quoting bills of exceptions and evidence as above and instructions.

*W. R. Wilson,* for appellant.—The declarations of the husband should have been excluded: Tisch v. Utz, 142 Pa. 186, Parvin v. Capewell, 45 Pa. 89; Gamber v. Gamber, 18 Pa. 363; Bradford's Ap., 29 Pa. 513; Wall v. Staley, 91 Pa. 27; Pond v. Cruse, 10 W. N. 223.

The wife was not a competent witness: Bornstein v. Jacobs, 45 Leg. Int. 14; Suplee v. Laflin Mfg. Co., 21 W. N. 557; Boyle v. Haughey, 10 Phila. 98; Pleasanton v. Nutt, 115 Pa. 266; Topley v. Topley, 31 Pa. 328; Bradford's Ap., 29 Pa. 513; Walker v. Reamy, 36 Pa. 410; Rhoads v. Gordon, 38 Pa. 277; Winter & Hartman v. Walter, 37 Pa. 155; Curry v. Bolt, 53 Pa. 400; Pier v. Siegel, 107 Pa. 502; McDevitt v. Vial & Wife, 11 Atl. R. 645; Pringle v. Pringle, 59 Pa. 281; Bitner v. Boon, 128 Pa. 567; Kisterbock v. Lanning, 19 W. N. 54; Fidelity Ins. Co. v. Building Assn., 11 W. N. 205.

From Gamber v. Gamber, 18 Pa. 363, decided in 1852, to Bollinger v. Gallagher, 144 Pa. 205, decided in 1891, covering a period of forty years, as against the creditors of her husband, or even as against the administrators of an insolvent husband's estate, as in Gamber v. Gamber, or as against the next of kin of the husband, as in Bradford's Appeal, 29 Pa. 513, to bring the property claimed by her under the protection of the statutory provisions in her favor, it is necessary that her ownership should be proved by identifying it as the property which she owned before her marriage or that she had acquired since in a way entirely independent of her husband; and she must show this: Diehl v. Peterson, 127 Pa. 65; Spering v. Laughlin, 113 Pa. 209; Blum v. Ross, 116 Pa. 163; McDevitt v. Vial, 11

Atl. R. 645 ; Bollinger v. Gallagher, 144 Pa. 205 ; Tripner v. Abrahams, 47 Pa. 220 ; Pringle v. Pringle, 59 Pa. 281 ; Taylor & Co.'s Ap., 75 Pa. 115 ; Linsenbigler v. Gourley, 56 Pa. 116 ; Parvin v. Capewell, 45 Pa. 89.

*J. Hay Brown, D. P. Rosenmiller* with him, for appellee.— In testifying in her own behalf Mrs. Doersom was only availing herself of the privileges conferred upon her by the act of May 23, 1887, § 7, P. L. 158.

In the case of Pleasanton v. Nutt, 115 Pa. 266, there was a conflict between the husband and the wife, each one claiming the goods in controversy. The husband had claimed and sold the goods as his own and they were afterwards claimed and replevied by the wife. MITCHELL, J., of C. P. No. 2, Phila. Co., in the trial of a similar case, Suplee v. Laflin Mfg. Co., 21 W. N. 557, said : " Husband and wife are excluded from testifying against each other on grounds of public policy for the sake of domestic peace." The rule making parties incompetent to testify has been wholly removed by statute, and that in regard to husband and wife is confined to cases where domestic discord would result.

Thomas E. McElligott, was called and examined by appellant himself, and was thus made a competent witness for appellees : Act of May 23, 1887, § 7, P. L. 158 ; Corson's Est., 137 Pa. 160.

OPINION BY MR. JUSTICE DEAN, October 2, 1893 :

Philip Doersom, a carriage manufacturer of Lancaster, being embarrassed by debts, on October 8, 1889, for the purpose of preferring certain creditors, confessed judgments to them aggregating about $14,000. On the following 24th of October, B. F. Davis, this defendant, obtained judgment against Doersom, adversely, in the sum of $358.50 and costs.

One of the preferred creditors on October 9, 1889, issued execution on his judgment, and on it all the personal property, indisputably owned by Doersom, was sold. But there were some articles of household furniture in the house occupied by Doersom and his family, also a top buggy on the premises, which had not been seized on the first writ. So, on November 16, 1889, Mr. Davis issued execution on his judgment and levied on this property.

Lydia C. Doersom, wife of defendant in the judgment, claimed all the household goods seized, and Everts & Overdeer claimed the buggy. This issue, under the interpleader act, was then framed to determine the title to the property. Before it was tried, Mrs. Doersom died, but her deposition in the contention had been taken before her death, and afterwards her executors were put on the record as plaintiffs. Her husband's name, apparently, because of the marital relation, had been put on the record with hers before her death, and so remained at time of trial. It was shown the buggy was the property of Everts & Overdeer, and as to that there is no longer any dispute. As to the household goods, there was a verdict and judgment in favor of the executors of the wife, and from that judgment comes this appeal by the defendant and execution creditor.

The first three assignments of error relate to the admission of declarations of Philip Doersom, the husband, disclaiming ownership of the property in dispute.

There is nothing on the paper books to show for what purpose this testimony was offered, nor anything to show why it was objected to, nor on what ground the court admitted it. The admissibility of testimony, in general, depends on its purpose. The declarations of the husband for some purposes would have been admissible. They could not be given to make title in the wife under the circumstances developed in this case, but as the printed testimony does not disclose that was the object, we will not "guess" that it was. Rule 24 of this court says: "When the error assigned is to the admission or rejection of evidence, the specification must quote the full substance of the bill of exceptions, or copy the bill in immediate connection with the specification. Any assignment not according to this rule, will be held the same as none." There is not a single specification, in the offer or objection to this evidence, of its purpose, or in the assignments of error. Why it was offered, why it was objected to, and why the court admitted it, do not appear. Counsel for appellant, in his argument, for the first time, urges the objection that it was error to admit the mere declarations of the husband to sustain the wife's title. If the existence of the alleged error had been made to appear, it would have been our duty to consider and pass upon it. As it stands,

under our rules, we must treat the assignment as if none had been made.   Huckestein v. Kelly and Others, 139 Pa. 201.

The 4th assignment is to the admission of the deposition of Lydia C. Doersom, the claimant.   It is alleged, she was not a competent witness, because her testimony tended to defeat her husband's title.   Without doubt, in a contest between her and her husband as to the ownership of the property, she would have been incompetent.   Public policy in such case determines the incompetency; such antagonism promotes marital discord, therefore the law will not tolerate it.   By the 4th section of act of May 23, 1887, the policy of the law in this particular is restricted to cases where they offer to testify against each other.   Are they in that attitude here?   The husband is the defendant in  . the execution, and the creditor alleges the property seized belongs to his debtor; but the debtor, the husband, disclaims all ownership, and alleges it is his wife's.   How does she testify against him when she asserts a right which he concedes?   She claims and he disclaims the property.   The creditor's averment of title in him does not constitute him the owner.   The fact that the seizure, under execution, if consummated by sale, will result in payment of part of his debts, does not establish title in him.   If the husband actually claimed the property and was on the side of the execution creditor, then the antagonism which the law contemplates would exist, and render the wife incompetent.   But the law does not close her mouth as a witness solely because she is the wife of a debtor whose creditors have seized her property to satisfy his debts.   Contention must result from the individual hostile assertion of property in the same thing, before the "against each other," which disqualifies, can be said to exist.   Pleasanton v. Nutt, 115 Pa. 266, decided before the passage of the act of 1887, is not in conflict with this reasoning.   There, the decision was based on the ground that the testimony of the wife would fix the liability of the husband for the breach of an implied warranty in the sale of chattels; her testimony was directly against him.   Here, her testimony imposes no additional liability on the husband, if the execution creditor fails of his purpose.   The argument of appellant's counsel is based throughout on the assumption of the husband's ownership of the property; but the ownership was the very

point in dispute, not between the husband on one side and the wife on the other, but the husband and wife on one side and the creditor on the other. The presumption of the husband's ownership would have been the same in case of any other claimant than his wife, and, in the absence of any other evidence, would have been conclusive in favor of the creditor. But this is only a presumption which the law raises; when the wife asserts and the husband disclaims ownership, the presumption no longer controls, and title becomes a question of fact to be determined by the weight of the evidence. It follows that under these circumstances, the wife was a competent witness as we have decided in Evans v. Evans, 155 Pa. 572, a case presenting similar facts and decided the present term.

The 5th, 6th, 7th and 8th assignments may be considered together. They all deny the sufficiency of the evidence of plaintiffs to establish title in Mrs. Doersom. The evidence tended to prove these facts: That a large portion of the household property had belonged to Mrs. Doersom more than thirty years before, and had come to her, she then being a widow, from her first husband, a Mr. Norbeck. Objection is made by appellant, that this, at most, only shows title in the first husband. But as he had been in his grave thirty-four years, we think the jury might fairly presume that her title was settled. As some of this property had become worn by use in his family, the second husband had repaired or replaced it. This, appellant alleges, changed the title. We do not think so. If the husband used the wife's property in his family, and by the use it was worn out, he had a right to replace it, and in so doing he acquired no title. As to the piano, there was evidence to show that, years before, when not indebted to the appellant or to others, the husband had presented it to one of his children, who gave it to her mother. The evidence does not show, as appellant alleges, the husband retained control of it; it was in the house occupied by him, and he had such control over it as he had of his wife's clothing, or personal jewelry; he could, by physical force, have taken it back; this, in view of the domestic relation, is, in no legal sense of the word, control. The testimony shows, the wife, when she married, had a separate estate of $5,000, besides this personal property. There was evidence, which, if believed,

rebutted the presumption of the ownership of the husband which the law raises from his apparent possession, and which warranted the verdict.

All of the assignments of error are overruled, the judgment is affirmed, and the appeal is dismissed at costs of appellant.